# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**414**

**KA 12-01879**

PRESENT: SCUDDER, P.J., PERADOTTO, LINDLEY, VALENTINO, AND MARTOCHE, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

STEPHEN NOAH, DEFENDANT-APPELLANT.

---

LIPSITZ GREEN SCIME CAMBRIA, LLP, BUFFALO (TIMOTHY P. MURPHY OF COUNSEL), FOR DEFENDANT-APPELLANT.

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (NICHOLAS T. TEXIDO OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Erie County (Christopher J. Burns, J.), rendered June 9, 2011. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree and criminal possession of a controlled substance in the fifth degree.

It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, the plea is vacated, the motion to suppress is granted and the matter is remitted to Supreme Court, Erie County, for further proceedings on the indictment.

Memorandum: Defendant appeals from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) and criminal possession of a controlled substance in the fifth degree (§ 220.06 [2]). We agree with defendant that Supreme Court erred in denying his suppression motion. Although the determination of the suppression court is entitled to great weight (*see People v Prochilo*, 41 NY2d 759, 761), we have the fact-finding authority to determine whether the police conduct was justified (*see People v McRay*, 51 NY2d 594, 605). The evidence at the suppression hearing established that the police were alerted to a location in Buffalo by an anonymous 911 call describing a "possibly Hispanic" male in his late 20s who possessed a firearm at a bar. The caller stated that the suspect was of average height, weighed approximately 300 pounds, had a shaved head, and was wearing a burnt orange jacket. The caller also indicated that the man had left the bar but did not indicate where he had gone. When the police arrived at the location of the bar, a bar patron on the patio pointed in the direction of defendant, who was standing in front of a building three doors down from the bar. The police then observed defendant, a 31-year-old non-Hispanic male of average height and significantly lesser weight, with a full head of hair and a long dark coat. Based on the inconsistencies between the

description provided by the anonymous caller and defendant's actual appearance, as well as the ambiguous nature of the patron's pointing in the direction of defendant, we conclude that the police at that time had "at most only the common-law right to inquire" (*People v Benjamin*, 51 NY2d 267, 270; *see People v De Bour*, 40 NY2d 210, 215), and they exceeded the scope of that permissible inquiry.

The officer who approached defendant testified at the suppression hearing that he asked defendant to step away from a group of individuals with whom defendant was socializing. The officer escorted defendant to the curb while physically holding defendant's waistband, and he instructed defendant to face the street and to place his hands on the roof of a civilian vehicle. The officer testified that at that time defendant was not free to leave. Having detained defendant in that manner, the officer then explained to defendant the reason for the police presence. The officer asked defendant if he had any contraband and if defendant would consent to a search of his person. Defendant consented to the search, during which the police obtained the physical evidence sought to be suppressed. In light of the fact that defendant was illegally detained, i.e., without a reasonable suspicion that he was committing or had committed a crime (*see* CPL 140.50 [1]), his consent to the search immediately thereafter cannot be considered voluntary (*see People v Packer*, 49 AD3d 184, 186-188, *affd* 10 NY3d 915).

Although " 'a defendant who challenges the legality of a search and seizure has the burden of proving illegality, the People are nevertheless put to the burden of *going forward* to show the legality of the police conduct in the first instance' " (*People v Lazcano*, 66 AD3d 1474, 1475, *lv denied* 13 NY3d 940). We agree with defendant that the People failed to meet that burden. The court therefore erred in refusing to suppress the physical evidence recovered from defendant's person as the result of the illegal search as well as defendant's subsequent statements to the police (*see Wong Sun v United States*, 371 US 471, 487-488; *People v Hall*, 35 AD3d 1171, 1172, *lv denied* 8 NY3d 923). "[I]nasmuch as the erroneous suppression ruling may have affected defendant's decision to plead guilty . . . , the plea must be vacated" (*People v Ayers*, 85 AD3d 1583, 1585, *lv denied* 18 NY3d 922 [internal quotation marks omitted]).

Entered:  June 7, 2013                          Frances E. Cafarell
                                                Clerk of the Court